We will move on to our second case this morning of Inre-ESML Holdings Inc. Jim Saywell, I represent Cleveland Cliffs, and with the court's permission, I'd like to reserve three minutes for rebuttal. Two different parties each sought to unseal judicial records. The bankruptcy judge granted both of their requests. It should have granted neither one. And it should have granted neither one for one overlapping reason and then for a host of reasons unique to each of the requests. The overlapping reason is that the bankruptcy court applied the wrong legal standard to assess the unsealing requests. It should have applied the Bankruptcy Code Section 107, which is mandatory, not discretionary. Which part of 107 are you talking about, 107A or B? B-1, Your Honor. You can see that A, there's a general presumption of access. Correct. General presumption. Correct. So that would seem to be a codification of common law. Correct. But it's B that you are saying is different than the common law. Is that correct? It is. That's exactly our argument. B is certainly different in that it says shall, not may. But let me ask you, B-2, scandalous defamatory matters. So a creditor accuses a debtor of a fraudulent transfer. The debtor says, I want all of this material kept under seal because it's defamatory of us. Must the district court grant the motion? If it's truly defamatory, then yes. But let's say it's not. Let's say the debtor fears it, maybe it's an exaggerated fear, subjectively honest. But he says, well, it could be defamatory, it could be read as defamatory. But the district court's best guess is it's not defamatory. That is the proper inquiry. Is it defamatory? Is it in fact defamatory? Is it going to harm my reputation objectively, not subjectively? Your Honor, yes. And you should look to the Ninth Circuit case in this context, which dealt with the scandalous and defamatory, Judge Acuda. And the First Circuit also. How about scandalous? Scandalous is going to be the same analysis, right? Not just, it looks bad that I'm accused of a fraudulent transfer, okay? But, you know, like defamatory. Truth is a defense to defamation, right? So if in fact you're guilty of the fraudulent transfer, maybe it's going to hurt your reputation, but it gets revealed, correct? Yes. If it's defamatory, if it's not, it doesn't. It's accused that you were a little too friendly, you were cozy, maybe there's some allegations that you were inappropriately cozy with the person you transferred things to. But if it's not objectively scandalous, the court should deny the request. Even if subjectively, the person's honestly afraid of the scandal. We don't, I don't think we have a position on objective versus subjective, but the inquiry is, is it scandalous? What scandalous means would be the question the court would be asking. How about under C-1? The court may protect an individual if there's an undue risk of identity theft or unlawful injury, okay? Person's afraid that putting his name out there in the bankruptcy filings could lead to someone stealing it or spoofing it. But the court says, eh, this is just an ordinary risk of identity theft. Anytime your name shows up somewhere, right? Court should deny that request. Well, under C, the court does have discretion. Okay, the court has discretion, but the court shouldn't exercise that discretion if it decides it's just an ordinary risk of identity theft, not an undue risk of identity theft. I don't, I do not have a position on C-1 and the standard that is applicable there. If we think that B-2 has to be objectively harmful for scandals or defamatory, and C-1 has to be objectively an undue risk of identity theft, why shouldn't the court be making an independent determination, whether it's confidential commercial information under B-1? Notice to our associates, we read these provisions together. Sure, Your Honor, I do not think that we are arguing against the line of your questioning. The determination that must be made below and that was not made is whether the sealed documents are confidential commercial information. That is a different question than the common law standard asks. The common law standard is a two-step standard, as this court set forth in a number of cases, including Avandia. We don't do a balancing of the equities.  And that first question is, is this the category of stuff that was protected? One of those things, it looks a lot like confidential commercial information, but what B-1 gets rid of is the second step. That second step under Avandia is, is it serious, clearly defined, and current injury to the party wanting to keep the records sealed? To clarify, you're not making any arguments under B-2? Correct, correct. Or C, or C. Or C. Would you read any injury or harm entirely out of the confidential commercial information category? We would. Now, that would be a question that we would brief below. Even an objective risk of harm? If the document, a company cannot just claim. It cannot just put in an affidavit saying. They claim it all the time in front of us to seal things. Right, I understand that. And so that is not enough. We would still have the burden below to show that it is confidential commercial information. We can't just say it. When we look at the term confidential, why shouldn't we import into that our understanding of what the common law would require? I mean, the term isn't defined. But it's associated with other things like trade secrets, where the release of the information, disclosure, would cause injury. Why, I mean, let's say we have just emails between employees in a company. That's not something that the public has access to. It is confidential in the sense of being non-public. Is that sufficient for a claim of confidential commercial information? So I'll answer that with two responses. The first is that even if you do think that, that you have to show some sort of harm, we would still prevail here because it's still mandatory, not discretionary. And it still isn't, I don't know how you would get clearly defined serious and current. So that would be the first answer. But the second answer is that no, we think that the statute is best read by its plain terms of commercial information that is confidential. And you're saying that, just looking at the words, because it's protect an entity with respect to a trade secret or confidential research, development, or commercial information. But you're agreeing that confidential shades commercial information. Yes, Your Honor. So it would be up to a court to say it's not confidential because somebody else has just told me it's already out there in the public.  Yeah. And what needs to be confidential is the commercial information. If the email is internal and therefore confidential, but it has nothing to do with the commercial operation of the business. Well, plus, plus, without confidential, you could say anything's commercial and it's extremely broad. Correct. And that would be very, very different than what we currently have coming up. Say we've got an asset and liability sheet. It's stale information, but it's not, hasn't been released to the public. It wouldn't cause any injury to release it to the public, but it's not something that's public. It does relate to their commercial operations. Is it your position that that would qualify as something that was a confidential commercial document? Yes, Your Honor. And the reason is there is no current or serious injury requirement. And putting that gloss on the statute would be contrary to the Ninth Circuit, the First Circuit, even the Second Circuit, which dealt directly with confidential commercial information and protected that information in the Orion case. But doesn't exception swallow the rule? I mean, the default is still supposed to be a right of access. And it's saying that confidential is essentially something that's not public and relates in some way to commerce, which would seem to sweep in just about everything that comes up in commercial litigation. We do not think the exception swallows the rule. And I think as proof for that, we're here objecting about 35 documents in a massive antitrust case that has been going back for seven years. So for us, the exception does not swallow the rule. And I don't think it needs to swallow the rule for this court to hold that what the bankruptcy judge did below was wrong. You do not, it is not exactly the same overlapping with the common law. As your honors heard in the last case, that 107B1 in this case is the proper standard. Now, to flesh out that standard, the court could remand and allow the full briefing on what exactly is commercial information. Unfair advantage to competitors is one gloss that Orion, the Second Circuit, put on it. The Ninth Circuit suggested that that was wrong. You don't really look to the common law sources for defining the term. Let's talk about what the stipulation was about the Evandia standard. You're saying the stipulation was just that these wouldn't cause clearly defined serious and current harm? Correct. We didn't, the exact stipulation was simply that we didn't meet the Evandia standard for these 30 copies. But I'm kind of curious why the district court finding was it wouldn't cause the kind of required to meet the Evandia standard. Can't we affirm on that ground that just, I don't, it appears that they found, the district court found there wasn't a real competitive harm here. Why isn't that enough to affirm? It's not enough to affirm for two reasons. Number one is the reason we've been discussing so far in my time up here, and that is we don't think that the confidential commercial information carries with it a serious current harm requirement. The second reason, though, is that even if it carries some sort of competitive injury requirement, there's no, I don't know how you get to the gloss of it's the exact same as Evandia, which is to say, I don't know how 107B1 is the exact same as the common law. If this court holds that, it would be splitting from the unanimous courts around the country. Judge Akuta's opinion in the Ninth Circuit is really good on this point. It is that it does not carry with it the common law soil, and in fact, the Milwaukee Supreme Court case, there's a presumption that Congress controls, not the federal common law. Federal common law is the big exception, not the rule. So those are the two reasons. It doesn't carry with it, and I think the nature of the injury could be fleshed out on remand. The bankruptcy judge, the bankruptcy court, held very clearly that we presented this argument below, and we did, in fact, present this 107B argument below. We did not yet get to the chance of arguing what exactly confidential commercial information means and fleshing that out, which we submit would be a proper thing to do on remand if this court does, in fact, remand. And that is, unless the court has further questions on that, I'm happy to discuss any of the other number of issues in this case where I will save the rest of my time for rebuttal. Let's have five minutes, please, Mr. Time. Would you address in the argument you're making where your concerns about improper motive would come into play? Sure. So I think that where our concerns with improper motive come into play is only if the court holds that the common law standard, not 107B, applies. And so if the common law standard applies, then what we have is the Nixon Supreme Court decision, which holds that courts traditionally have balanced, on one hand, the presumptive right of the public to access documents against, on the other, the reason or how the documents will be used. In that case, the court ends up holding, after a long discussion that ends up being mostly dicta, that holds that a statute applies, and therefore the tapes, the Nixon tapes, should not be disclosed. But in the process of getting there, it gives a standard that subsequently courts, including this one, have applied, including ones in this circuit, at least. And that standard is, if the documents will be used for an improper purpose upon the unsealing, then they should not be sealed, or at least, or unsealed, or at least that a court should balance those interests. And in Nixon, it was the purpose, the overt purpose was to commercialize the tapes. And they said that, and the court knew that, and they said, without this statute, that would be the balance. And you would look at the over-commercialization risk against the need of the public to have the Nixon tapes. What about the purpose of defaming, or a purpose of creating public scandal? Is that something that the statute has built into B-2? That is, it does track what the Nixon said with those categories, right? The difference in B-2 is that, in the common law, it's a two-step question. Step one is, does it fit within one of these Nixon categories that Congress put directly into the statute? Step two, then, is does it work a serious, clearly defined, and current injury? That step two analysis is out. But that's where the improper purpose, we still would have this question of improper purpose, even under the common law. All right. I'm sorry, if you want to finish up. I want to take you back, because you're quite right to cite Judge Acuda in Roman Catholic Archivist's Ninth Circuit, Ghetto Global, in the first. But when I look at it, Judge Acuda says, look, there are three particular divergences from the common law that mean we have to look at 107 and not independently at the common law. And she says, first, the common law distinguishes nondispositive and dispositive motions. So clearly, this applies to all papers. Second says, at common law, you could create new exceptions. We can't do it under the statute. There are three enumerated ones. And third, it was a may. Courts had discretion at common law. Now it's a shell. So yes, the common law is displaced in those respects. But it doesn't say anything about clearly defined, serious, and current. And I look back at Ghetto Global in the First Circuit. And again, yes, it says displaces the common law, but doesn't speak to this kind of what the materiality or prejudice requirement as a clearly defined, serious, or current. So you're relying on a general assertion that 107 is different, and we shouldn't just narrow the common law. But nothing in those cases speaks specifically to there being no prejudice standard or a lower prejudice standard than the common law, correct? Correct. I'll give you two more cases that do speak to that. Number one is the Orion Pictures case. That's the Second Circuit case. Page 27, the court holds that you need under 107b1, same thing as issue here, you need only to show, quote, confidential and commercial in nature. That's page 27. But then in one case, I'll give you that we did not cite in our briefs. And I regret not citing in our briefs. But it's a Supreme Court case, Food Marketing Institute against Argus Leader Media. It's at 588 U.S. 427. And it dealt with the FOIA exception for confidential commercial information. And the majority rejects the idea that there must be substantial competitive part. That's a FOIA case. The interests are different. It's not a First Amendment access to the court. But Orion Pictures, I'm trying to pull this up. Well, while you are, if I may, Your Honor, given my time, I do want to emphasize that it cannot be distinguished based on it's a FOIA case or not. The question that was presented to the court was whether the term confidential commercial information, it was rearranged. It wasn't exactly like that in the statute, as it isn't here either. It was whether that term picked up the common law substantial injury requirement. And the majority holds, I think it's at page 439 to 440, that it does not pick up that injury requirement. So that is a very good case to answer Your Honor's question. And I apologize for cutting off Your Honor's question. Go ahead. So in the Orion Pictures case, I agree, Your Honor. It's not as good as that Supreme Court case. But no, it is good in the sense that they do not engage in a, I think they hold that it's not a mere trigger for the common law analysis. Finding that it is confidential commercial information does end the inquiry. And they did not engage in a current, serious, clearly defined discussion as this court's unsealing case. All it says about prejudice is you must determine that it is this. It doesn't have to be extraordinary or compelling need. But it doesn't give any, Orion does not give any independent definition of what is confidential information. And that could be done on remand. I think Orion does do enough to say that it's not the same as the common law. And the extraordinary and compelling is the typical burden on the party at common law, is we need to show a compelling or extraordinary reason to keep it sealed. Clearly defined as serious and current isn't as strong as extraordinary. Well, then perhaps I'm understating the argument because that is the normal exception for the common law. It's interesting, though, Orion goes on to say information which would cause an unfair advantage to competitors. Yes, that is the gloss that a lot of courts have given this. And, you know, that would not be our principal argument. You want us to take part of Orion that says it's not common law, but then not the part of Orion that applies it to the facts. I'm fine with you taking all of Orion, Your Honor. We would win under Orion. Unfair advantage to competitors, we can win under that standard. That is exactly what the 35 documents were. If you look at the protective order, confidential, highly confidential, or outside counsel, eyes only, those terms were all defined in the protective order, and they were defined exactly in those terms. We can win under the Orion unfair advantage to competitor standards. We were never given that opportunity to win under that standard. Orion and 107B applies not the common law of the NDS standard. Can you address the mootness issue as to we've got some recent motion and brief? Yes, Your Honor. Can we add another five minutes so we can fairly attribute 10 to your colleague? Thank you, Your Honor. And yes, Your Honor, I'm humbled arguing in front of you because you certainly know more about bankruptcy than I ever will. But I do think that the simplest answer— I'm not sure. I am sure. But I think the simplest answer is what we put in our brief, and the reason we put it in the brief is so, you know, given the time constraints and all the other issues, we could hopefully explain it as well as we could. But I'll summarize here. Number one is nothing is moot now, and that's undisputed. As things stand, the reference has not been withdrawn. Number two is if the reference does get withdrawn, it's not moot. It either sticks with the bankruptcy judge below, it being the motions to unseal because courts retain jurisdiction in a very limited fashion over their own dockets to seal or unseal records, as this court has held, or it does go—the motions to unseal do go to the district judge below. And at that point, again, nothing is moot. It's just a sequencing issue of what this court decides. And as we explained in our brief, you know, often this court will assume something for purposes of answering something else. The third point is if you disagree with us on this, we would ask for Munsingware vacater. It was to no fault of our own that this became moot, assuming that it did become moot, and that the bankruptcy judge's orders below should be vacated under Munsingware. You also make the argument, though, that the district court and bankruptcy court are a And I take it you're implying that 107 would carry over to the district court's review of these documents. Where do you see a basis for that? What's the authority for that? The hardest question on mootness is the one you just answered. So that's our 2B argument in our supplemental brief. That is purely from first principles, except for there's one case where I think it was the district of Puerto Rico. The judge acted as the bankruptcy court because that district doesn't have a bankruptcy judge, as I understand it. And he did apply, he or she did apply the 107B standard. The first principles analysis there is that now that we have, now that there are no bankruptcy courts that are separate from district courts, that they are a unit, when 107B says the bankruptcy court shall keep sealed documents, what it is referring to or what it should be read to be referring to is the court exercising the bankruptcy authority, which in some cases would be the district court and in most cases would be the bankruptcy judge. Speaking to first principles, why would there be a, or should there be a distinction between the standard that's applied in a district court versus a bankruptcy court? Are there reasons particular to sealing standard in bankruptcy that you're arguing should apply even if administered by the district court? Yes, Your Honor. And that's why 107A refers to papers filed on the dockets of a bankruptcy court or in a, or under chapter 11. Those unique policy interests are why Congress put in 107 in the first place. Bankruptcy involves private parties, not public rights. It is meant to be quick and efficient. It involves lots of confidential commercial information and just lots of confidential information more generally. All of this, this is the unusual case that's taken seven years. A lot of times bankruptcy moves quickly. And so we can't have these balancing inquiries in the ordinary course in bankruptcy cases. Isn't your theme, however, with respect to the mootness issue, it's premature? That is our theme, Your Honor. Our theme is it's premature. Now, I would never presume that this court would resolve cases in any order. So I can't, I can't assume that it will always be premature, which is why we put in our second two responses. Okay. Thank you, Your Honors. May it please the court. David Suggs from White and Case on behalf of the appellee, Misabi Metallics. Uh, this court should affirm the ruling of the bankruptcy court because the bankruptcy court was correct that 107B, and we're only talking about the exception for confidential commercial information. The protections of 107B are identical to the protections of the common law. Now, your friend on the other side, you know, attacked that very specifically. He said, you know, Avandia, the findings here are based on it being clearly defined serious and current, but O'Brien, Orion Pictures is unfair advantage to competitor standard. He wants a remand on that. So isn't there daylight between those two quite different verbal formulae? We don't see any, Your Honor. And, and Your Honor was exactly right that Orion does stress the importance of the impact on essentially competitive harm, which is. But he's, he's granting competitive harm, but it doesn't have to be the level of clearly defined serious and current. Well, first of all, and as someone else pointed out, it may have been you. Uh, my colleague does not identify any authority to support his position that the 107B exception for confidential commercial harm or information is broader than the common law. He just extrapolates from this idea of harm. But as Judge Krause pointed out, the confidential aspect of commercial information is essentially. Isn't the common law does a balancing test? That's 107B doesn't talk about a balancing test. The question is, is something confidential objectively? That's correct. But 107B, well, as Avandia held, the common law protects against information that would harm a company's competitive standing. That's essentially the same as what courts have held 107B protects. Where's the stipulation? What was the Avandia stipulation here? Because your friend says they did not stipulate that this would, um, you know, that it wouldn't meet the Avandia standard. But he says he could prove on remand that it would show an unfair advantage to competitors. How is that foreclosed here? Why don't we have to remand on that? Well, the first reason is that the standards are the same. But the second reason is that Cliffs had the burden in the bankruptcy court to establish on a record by record basis that it can meet the standard on a 107B and it didn't do so. And it wasn't because Cliffs didn't. I think what Judge Goldblatt's saying, look, in effect, my heart's with Cliffs on this. But it looks, I think I'm bound by Avandia. And the question is, is he really bound by Avandia's common law or is 107 different as four circuits have so held? For purposes of this appeal, we will concede that 107B displaces the common law, but the as to confidential commercial information is the same as the common law. And I just want to revisit the point I was just making is that Cliffs submitted a detailed chart in the same brief in which Cliffs first cited 107. So when Cliffs was aware of 107, Cliffs submitted a detailed chart record by record saying these records should be sealed under Rule 26 and these records should be sealed under Avandia. To what extent, when you look at confidential, do you look at harm under 107B1? The same extent as in the common law. You look at whether it causes competitive harm, which courts have described as in the 107B context as giving competitors an unfair advantage and Avandia described as harming a company's competitive standing. But it's the same thing. What is different between 107B1 and common law? For purposes of... You said 107 displaces, so what is different? Well, so I'm only speaking about the confidential commercial information provision of 107B. It is true that 107 is mandatory and the common law is not. But the mandatory requirement, you only get to if the documents meet that standard. If the documents don't meet the standard under 107B, it doesn't matter. Let's run through the three factors your friend was mentioning. Current, well, you've got an answer, which is these all speak in the present tense, that it is harmful, not that it was. Clearly defined, okay, maybe it has to be clear. I'm not sure that makes a difference. But he's got the point that this has to be serious and at common law. And so how does unfair advantage to competitors import the seriousness requirement? Well, I think the unfair advantage implies serious. If it's a meaningless advantage... Implies a serious injury versus a meaningful or unfair injury. I mean, there might be daylight between those two. We don't see it, your honor. The whole point, again, is to protect against competitive injury. If it's not a serious injury, it's not really competitive injury. A company that doesn't... From a competitive standpoint, if the information is disclosed and wouldn't cause a serious injury, then the company shouldn't have a serious... Shouldn't be put at a competitive or unfair competitive disadvantage. But again, Cliffs had the opportunity to make these arguments to the bankruptcy court, and it did not do so. And it would be unjust and a waste of judicial resources to now remand the case and give Cliffs a second chance to do what it should have done the first time. And the third reason that this court... If you tell... If we tell Judge Goldblatt that his instinct was correct, that you, as a matter of first principles, he would like to rule in favor of Cliffs, and he's not bound by Evandia, then isn't it a whole new ballgame for Judge Goldblatt? Well, no, your honor, because the standards are the same. But again... You argue that to him, and you're going to have to turn him around from his instinct that they should remain confidential commercial information. Well, his instinct was that the standards are the same. Now, he may have felt that as a matter of... As a matter of first principles, this court agrees with Cliffs' point, both about the intent behind and the effect of granting Massabi's motion. The court nevertheless believes that the better reading of third person... Third circuit precedent, as it now stands, requires it to grant the motion and unseal the documents. My understanding of what Judge Goldblatt was saying there relates to the estoppel points that Cliffs is making, and the improper purpose points that Cliffs is making, not the standards. It's all about unsealing. Yeah, it's all about unsealing. But what Judge Goldblatt was saying, and I don't obviously want to speak for the judge, but what I understood him to be saying is that I don't want to unseal these documents because I feel Massabi was trying to go around the protective order to get the documents unsealed. I don't think we're going to decide what's confidential or not confidential. All I'm saying is, maybe the question is, we should let Judge Goldblatt tell you what he meant by that statement. Well, again, Your Honor, Cliffs had the opportunity to make this argument below, and it did not do so. And it had an obligation to unequivocally make its claim. But it's before you speak. Judge Goldblatt ruled on that. No, Your Honor. This was when... So Cliffs submitted a brief and a chart to the court explaining why it thought the documents should be sealed under the common law and under Rule 26, but it made no argument, none, under 107. It had the opportunity to do so. It did not do so. That's your judicial stop argument, correct? No, Your Honor. This is just that Cliffs had the burden of presenting evidence and establishing... What do you think they were arguing before, Judge Goldblatt, other than 35 documents, should they remain sealed or not sealed, right? I beg your pardon? What do you think was being decided by Judge Goldblatt? Should 35 documents be sealed or unsealed? Right, and Cliffs did not make the argument that any of those documents should be sealed under 107. That was its burden to do so. It can't raise it for the first time now. What argument did they make? They alluded to 107 in a very opaque way, but they didn't identify any documents that they said should be sealed under 107. We'll hear back from your opposing counsel on rebuttal on that. And this court could also affirm the bankruptcy court on the basis that these documents, which it's undisputed, are at least six years old, and which it's undisputed relate to Cliffs' business in a past life. Cliffs, at the time these documents were created, was a seller of iron ore pellets. We're not going to get into the document-by-document review, but would we need to say anything more if we were to conclude that 107 applies, it's different, it displaces the common law? And back to Judge Goldblatt, to address, as your colleague has suggested, what confidential commercial information means. The question is, would you need to say any more than that? Yes. Should we be addressing the question of what the content is of 107, or do we say it displaces the common law, and let the bankruptcy judge address that in the first instance? I understand, yes, Your Honor. I would urge the court to say that the protections under 107B for confidential commercial information are identical to the protections under the common law in respect of competitive harm. Well, okay, but how about motive? I mean, and I mean to ask this of Mr. Saywell too, like a common law motive was relevant, but this seems to cut the other way, where if we codify it, then motive wouldn't be relevant, would it? We don't believe motive is relevant in either situation. Under Avandia and Lucadia, this court said motive doesn't matter, and that's the same as other courts felt, the circuit, for example. But if one says shall 107, and it's pretty clear the common law is may, pursuant to a balancing test, there's got to be a difference, and isn't it motive, or whether something will work, a clearly defined and serious injury to the party seeking closure, which is them, which is CLPS. They're seeking closure, not disclosure. Right. Well, so we're not arguing that 107 as a whole is identical to the common law. We're only arguing that 107B's provision relating to confidential commercial information. It's clear that I think we can agree that 107A codifies the common law.  So we're only dealing with 107B, in this case, B1.  And so if one is shall 107, and the other is may, balancing under common law, Avandia type of thing, that obviously is a difference, is it not? That is a difference. But the shall only comes into play if the documents meet the standard for sealing. If it's confidential commercial information. Correct. And that's for Judge Goldblatt to decide, not so much us. Well, we believe that this court can hold... So there is no dispute. CLPS does not dispute that these records should be unsealed under the common law. So if the standard under the common law is the same as the standard for confidential commercial information, then these documents could be or should be unsealed by CLPS own admission. But under Avandia, the thing you balance is, will the disclosure work a clearly defined and serious injury to the party seeking closure? And it seems like it's a much looser standard, or I will take the word much out. It is a looser standard for Judge Goldblatt to apply if it's under 107, or depending on how you look at it, looser or more rigid. The point is, you don't have to look at harm, or as Judge Peebas says, motive. I think you do have to look at harm. That's the whole reason that the restriction is only about confidential commercial information, not... Balancing is harm versus the privacy, correct? Yes, Your Honor. And so 107 does something different than the balancing of harm versus privacy. What is that something different? The confidential element of commercial information is that balancing. It is accounting for the fact that some information should be protected. It's just confidential information, which we call as a competitive harm. So you're trying to say that shall really doesn't mean shall, it still means may. No, shall applies when the standard is met. So if the standard, if the documents... If it's confidential commercial information, it's shall. Right. And it doesn't look that there is a motive element in that. So this court has held that motive is irrelevant, at least under the common law, to determining whether documents should be sealed or not. Lucadia said that every party is on equal footing when seeking to unseal documents. There's... It doesn't matter what the party's motive is in seeking to unseal. And it's important to remember here that this is not a bankruptcy case anymore. The only claims at issue remaining are antitrust claims and tortious interference claims. This isn't a case under Title 11 any longer. So you're saying that 107 still incorporates the common law harm component in determining what is confidential commercial information? Yes, Your Honor. And we'll see what the opposing side thinks of that. You want to take a moment and address the mootness argument that you raised? There have been, in your colleague's brief, a number of specific points that were raised about why it's not moot. I'm not sure that your brief engaged those. Would you like to take this opportunity to do that? Sure, Your Honor. Thank you. Well, the first point is we do agree with Cliffs that the case is still in bankruptcy court. So as a technical matter, it is not yet moot. But as Cliffs admits in its supplemental brief file on Friday, this case is going to district court. Cliffs says the reference to the bankruptcy court will be withdrawn. So this case is going to district court and it's going to trial. And these documents will be unsealed at trial. And before that, you know what that will be? We do not have a schedule yet because we have not been transferred yet. But these documents are critical to the case. They're going to be unsealed and they're going to become a part of the judicial record at the district court. Aren't we talking about at least months away, if not a year or more? Misabi is going to move. The bankruptcy court said it is done with this case. It's ready to go to district court. As soon as possible, we are going to move to withdraw the reference to the district court. Cliffs filed an appeal or a motion to amend on a couple of weeks ago, which we think is baseless. But once that's resolved, this case... And the efficient way of dealing with this is to let the judge who's most conversant with these particular documents, Judge Goldblatt, make that decision in the first place before the case goes to district court. Well, that would be... So this case has already languished for seven years. This case is ready to go to trial to allow Cliffs to have a second bite at the apple to make arguments about this under 107, which it should have made before. And to delay the transfer of this case to district court would be a miscarriage of justice, in our opinion. In other words, it would be a miscarriage of justice to have a very good judge who's familiar with these documents make the decision in the first place before it goes to district court? To give Cliffs a chance to delay this case? Well, I mean, Judge Goldblatt's very efficient. That's his reputation. Judge Goldblatt is efficient. I'm not casting aspersions of Judge Goldblatt at all. But the point is, Cliffs had the opportunity to make this argument. It didn't. It has delayed this case and caused this case to last seven years. It is trying to continue to delay this case, including with the mayoralist motion to amend that it filed two weeks ago. And it should not be allowed to delay it any further. We should not let the tail wag the dog by remaining in this case to bankruptcy court to have this unsealing issue resolved. When once the case gets to district court, these records are going to become public. The interesting thing is, if this goes back to Judge Goldblatt and he makes a determination, as he seemed to be inclined to do, but for Avandia to have these documents remain private, is the next step to go to district court? Or is the next step that you'll do another appeal? Or you'll do an appeal? I would have to speak to Mike Klein about that. But I do not expect that we would appeal this issue and delay the trial. Our job, ultimately, is to get vindication for Cliff's anti-competitive conduct. And that's another difference between this and most bankruptcy cases. As the Supreme Court has made clear, an antitrust plaintiff acts as a private AG, which is vindicating the public interest. And that's what Mosambi is doing here, as well. It is vindicating the public's interest in these documents that go to a very important issue, which is free and open. You're saying it's unlikely that you would appeal? You would just go straight to the district court with the decision of the bankruptcy court if they made that decision? No promises, Your Honor. But I think that's where we end up. All right. Thank you. Thank you. Good morning, Your Honors. David Finger, representing Greg Hablum, the individual. I'll just briefly touch on three issues, given my limited time. First is the issue of appellate divestiture. And in dealing with that, I ask the Court to look at the issue side by side. There is only one issue that is raised by our motion that will affect the prior appeal. That is the fact that Mr. Hablum is an individual. He's not a litigant. He's not bound by any confidentiality order. So the estoppel argument would not apply there. Can you, in that regard, can you address the assertion in the appellant's brief at page one that there's some connection to Mosambi? Again, the record is empty on that point. My client is not, I'm not aware of any connection. I'm not aware of any apparent connection either. I think that that was put in there simply to color the Court's view. And I ask the Court to disregard it. Again, the issues in this appeal, raised in this appeal, are, is my client standing? And, I apologize, is he standing? And did he properly intervene? I guess it all comes down to jurisdiction. Did the Bankruptcy Court lose jurisdiction when the appeal was taken to this Court? Well, again, our point is that it didn't lose jurisdiction because the issues are different. Well, we have, we have, Frigg's is our standard and, and it's, it's simply that there are aspects of the case that are involved in the appeal. That's a pretty broad standard, right? It is, but as they often say, the devil's in the details. If one looks at that without parsing through the issues, then, then Your Honor's correct. But I don't know that that was intended when you have a broad standard. It has to, it has to be subject to some context. Even as a private individual, your client is still seeking the unsealing of these records, which would necessitate a consideration of the test for unsealing. That's true, but Your Honor, what we are promoting is neither, not a dispute between common law and the statute, but rather the application of the First Amendment, which cases say buttresses the, the statute, the common law right. But even that, beyond that, the Court's held that it is an independent right and therefore must, any statute has to be interpreted in light of that. And it is the First Amendment which imposes the clearly defined and serious injury standard. What about the, the fact that a ruling would moot the appeal? Why isn't that, that the sort of sign of fine on when it comes to appellate divestiture? Well, it wouldn't, I respectfully say it wouldn't moot the appeal. If, if the first step would have to be before, before the Court takes up a constitutional issue is the dispute that's happening in the prior appeal, that is which standard applies. And if the Court would, then would define that it's an absolute without any concern about injury, then it has to take into account the constitutional issue. And of course, it should not deal with a constitutional issue when there's another means of deciding the case. So my argument may be mooted, certainly. But it, you know, only, only if, you know, only if the Court would say we don't care about the, the other arguments, does, is, is there a crossover? There's a difference between. That's only assuming that, that, that's because of the stay, right? If not for the stay, if the Court were to, to rule, say rule on the basis that you're, you, you, you've pressed a First Amendment basis for disclosure of the documents, if they were disclosed, that's what would moot the appeal, right? If that were the case, but we are in this procedural posture we are in, and I apologize, went out of my head. Again, putting apart the procedural, the other arguments we're making, it was, it was not, it was not because even if we say it's an individual, it still has to be determined, A, in the first instance, statute versus common law, and then assuming that the Court would define the statute applies, and it's absolute, then the constitutional issue. So that remains, regardless of, the only thing that takes away from it is the estoppel argument. I'm quickly out of time. So unless the Honor has any questions on the other issues, I will stand on the brief. Thank you. Mr. Saywell, do you agree that if we're under the statute, motive is irrelevant? There's nothing in the statute that mentions motive. Correct, Your Honor. So that, that is, it's both broader and narrower, B-1. It would be narrower, well, it depends on whose perspective you're looking at it, but yeah, there would not be that improper purpose exception. A, A says you get to access this subject to the exceptions of B and C. It then becomes... The rule is A, and then the person seeking to keep it confidential bears the burden...  ...of persuasion on the exceptions, and motive is not a relevant consideration into whether to keep it confidential. There is no improper purpose separate exception, yes, Your Honor. And, and so I, I want to begin from there by saying that now it is, I'm happy to hear that We do think that's enough to resolve this appeal, and that a remand, to, to quote Judge Ambrose, it's a whole new ballgame than before Judge Goldblatt. Would you address the harm component? I will, I will. So there's a, there is daylight, to use Judge Bevis' phrase, between unfair advantage to competitors, even assuming that is the standard, that, that would be applied below, and serious, current, and clearly defined. That, there is daylight between that. So again, we will argue below that there, that it has to be confidential commercial information, which doesn't superimpose a, a harm requirement, an injury requirement. But even if we lose that below, there still is daylight between the common law and 107B. And of course, that doesn't even count for the daylight of balancing versus non-discretionary must. So we, we do think the court should wipe clean that, that order and, and remand to Judge Goldblatt, or stipulate. I don't read, because when I read those second and Ninth Circuit cases, you say that, I mean, they're good for you generally, but they seem to say there has to be a, a risk of harm, right? Well, the, the Ninth Circuit case, I, I don't think Judge Akuta could have been clearer that we don't look to the common law at all, even in defining. But in terms of whether there's harm or not, I mean, the phrasing in Orion Pictures and that Ninth Circuit bankruptcy appellate panel decision seem to presuppose that the advantage to, to the competitors is because it's going to harm. Sure. The person. Sure. So, and, and again, we, Your Honor, we will argue below that as, as our secondary argument that we can show harm to Cliffs from the disclosure of these documents because they're commercial information. They're about the business operations of Cliffs. So that, that is, and they're confidential. So we will argue that we can meet that. Your fallback argument, what's your main argument for harm not being relevant to this? That, that, that, that there is no harm requirement in the statute. It's confidential commercial information. Something can be confidential commercial information even when it's disclosure would not cause injury. It still is commercial information that's kept confidential. That, that then makes it into whatever the person keeps confidential, but by analogy to scandalous or defamatory or the credit risk, all those other things, it's only when the disclosure would cause scandal or would defame or would lead to data. I mean, it just seems to read them in part of material would suggest that there has to be some negative consequence that comes from revealing it. Yeah, I, I, I hear that Your Honor believes that. I would say just about the comparison to B2 and B1, the nature of something that is defamatory or even scandalous is very different from the nature of something that is confidential and about your commercial operations. Those are different things. Scandalous and defamatory carries with it necessarily in common usage more injury, more harm. I thought you agreed previously that, that it's simply being non-public can't be the test. We're looking at confidential as modifying also research and development. If you have research that is, it's not been made public, but wouldn't cause some harm in its disclosure, I thought you previously had, had agreed that, that still could be considered confidential. Yes, Your Honor. Our, our prime, our primary argument is that something need not harm to be confidential. Our secondary argument is if you disagree with that, there still is daylight between what Avandia requires and the 107B1 confidential commercial information. If using the Orion test unfair advantage to competitors, something can unfairly advantage Cliffs or any other company without causing it serious and current harm. There's, there's daylight between those standards as the, as we believe the courts have unanimously held. So that's why we do think that, and by the way, we also think that these can be questions for remand. But, but that, but that this court could answer that in the first instance. I, if with the court's permission, I do want to address Judge Ambrose point about whether we forfeited this argument. And the, the best answer I could give is Judge Goldblatt himself did not think we forfeited the argument. The appendix, page 66, he was describing Cliffs' argument and he said, quote, Cliffs argues that, that's not the quote, sorry, Cliffs argues that, quote, section 107 provides a basis for protecting information that would otherwise be subject to disclosure under the common law right of access. That is our argument that continues to be our argument. Our stipulation had nothing to do with that. Our stipulation was if I continue to apply the Avandia standard, as he said was his instinct in the initial hearing, what comes out under the Avandia standard? Our whole point is that the Avandia standard is different. So we stipulated to nothing about whether something is confidential commercial information. And again, I have to ask the court's permission, if the court wants to hear any rebuttal on Mr. Habelom's argument, I, I could, I could address that. I, I just want to be clear as to your argument. Is it there, there's no harm required at all? Or that the harm is an unfair commercial advantage, something different than the common law test? I, I, it is, well, it's, it's both, Your Honor. And it's the fault, it's, we have two arguments. Our primary argument is that there's no harm required. Our secondary argument is, even if there is harm required, it's different than the harm required by the common law. If you adopt the Orion test, at least there's a governor on having the exception swallow the rule. That, and, and again, Your Honor, that we would be very comfortable with this court applying the Orion standard. And that would require a remand, a vacater and remand to, to Judge Goldblatt to, to follow his instinct and to hopefully rule in our favor below. If the court does not want to hear rebuttal on Mr. Habelom, of course, we'll, we'll sit down. We would appreciate it that the party's making a transcript of, of this very helpful argument and, and splitting the cost. Thank you, Your Honor. We'll take this case under advisement. Thank both counsel for excellent arguments.